# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

ALISE MACHELL TYLER

            Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security

            Defendants.

**Cause No. 4:20-CV-82-JTJ**

**ORDER**

## INTRODUCTION

Plaintiff Alise Machell Tyler ("Tyler" or "Plaintiff") brings this action under 42 U.S.C. § 405(g) seeking judicial review of an unfavorable decision by the commissioner of Social Security ("Commissioner" or "Defendant"). (Doc. 2 at 1). Tyler was denied disability benefits at the initial as well as reconsideration levels. (Doc. 11 at 17). Administrative Law Judge ("ALJ") Michele M. Kelley issued an unfavorable decision on January 23, 2020. (Doc. 11 at 30). Defendant filed the Administrative Record on February 2, 2021. (Doc. 11). Plaintiff filed an opening brief on March 31, 2021. (Doc. 13). She asks the Court either remands the decision by the ALJ for an award of benefits or for further proceedings. (Doc. 13 at 8).

## JURISDICTION

The Court possesses jurisdiction over this action under 42 U.S.C. § 405(g). Venue is proper given that Plaintiff resides in Cascade County, Montana. 29 U.S.C. § 1391 (e)(1); L.R. 1.2(c)(3).

## PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on June 4, 2018, alleging disability beginning October 10, 2017. (Doc. 11 at 17). The ALJ identified that the Plaintiff had severe impairments including cervical degenerative disk disease, left shoulder arthritis with tendinopathy, osteoarthrosis of the thumbs, carpal tunnel syndrome, and emphysema with scarring from a history of tuberculosis. (Doc. 11 at 19). The ALJ found the Plaintiff meets the insured status requirements through December 31, 2020. (Doc. 11 at 19). The ALJ further found that Plaintiff maintained the functional capacity to preform light work. (Doc. 11 at 22). The ALJ concluded that the Plaintiff was not disabled as defined in the Social Security Act from October 10, 2017, through the date of the decision. (Doc. 11 at 30). The Appeals Council rejected Plaintiff's appeal on July 23, 2020. (Doc. 11 at 5-8). Plaintiff subsequently filed the instant action. Doc. 1).

**STANDARD OF REVIEW**

The Court conducts a limited review in this matter. The Court may set aside the Commissioner's decision only when then decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhard*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence also has been described as "more than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

**BURDEN OF PROOF**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(a)(3)(A), (B)).

Social Security Administration regulations provide a five-step sequential evaluation process to determine disability. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.

The five steps are as follows:

1.  Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante*, 262 F.3d at 954. The claimant bears the burden of proof at steps one through four. *See id*. The commissioner bears the burden of proof at step five. *See id*.

# BACKGROUND

## I.   The ALJ's Determination

The ALJ followed the 5-step sequential evaluation process in evaluating the

Plaintiff's claim. At step one, the ALJ found that the Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2020. (Doc. 11 at

19). The ALJ further found that the Plaintiff had not engaged in substantial gainful

activity since the alleged onset date of October 10, 2017. (Doc. 11 at 19).

At step two, the ALJ found that Plaintiff had the following severe impairments

through the date last insured: cervical degenerative disk disease, left shoulder

arthritis with tendinopathy, osteoarthritis of the thumbs, carpal tunnel syndrome, and

emphysema with scarring from a history of tuberculosis. (Doc. 11 at 19).

At step three, the ALJ found that the Plaintiff did not have an impairment or

combination of impairments that meet or equaled the severity of one of the listed

impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 11 at 22).

At step four, the ALJ found that the plaintiff possessed the following residual

functional capacity:

> To perform light work as defined in 20 CFR 404.1567(b), as follows:
> The claimant can lift and carry, push and pull, 10 pounds frequently and
> 20 pounds occasionally. Walk and stand about 6 hours in an 8-hour
> workday and sit about 6 hours and an 8-hour workday. The claimant
> needs to be able to alternate between sitting, standing, and walking
> between normal work breaks, which is defined as every 2 hours. The
> claimant can frequently push and pull and reach overhead with bilateral
> upper extremities. The claimant can frequently handle and finger

bilaterally with the upper extremities. The claimant can frequently climb ramps and stairs. The claimant can frequently balance, stoop, kneel, and crouch. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant can occasionally crawl. The claimant must avoid concentrated exposure to cold, vibrations, and hazards. Finally the claimant can understand, remember, and carryout simple, detailed, and complex tasks; can maintain attention, concentration, persistence, and pace for such 8-hour workdays and 40-hour workweeks; can tolerate interaction with supervisors, coworkers, and the public; can tolerate usual work situations; and, can tolerate changes in usual work settings. (Doc. 11 at 18–19).

Based on this residual functional capacity, the ALJ found that the Plaintiff could perform some of her past work including as a casino worker and gift ship attendant but cannot perform her past work as a stocker, or deli worker. (Doc. 11 at 12).

At step five, the ALJ determined that the Plaintiff remained capable of making a successful adjustment to other work in the national economy considering her age, education, work experience, and residual functional capacity. (Doc. 11 at 29–30). The ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. (Doc. 11 at 29–30).

## II. Plaintiff's Position

Plaintiff argues that the ALJ erred in the following ways: (1) improperly discounting the finding of her treating physicians; (2) failing to properly analyze frequency of treatment, duration and disruption to routine in order to discount the treating healthcare providers as well as the Plaintiff's testimony; and, (3) failing to

incorporate all of Plaintiff's impairments into the vocational consultant's hypothetical question. (Doc. 13 at 2).

## III. Commissioner's Position

The Commissioner asserts that the Court should affirm the ALJ's decision because they properly concluded that the Plaintiff was not disabled. (Doc. 14 at 2). Alternatively, if the Court determines that the ALJ committed an error in the analysis, the Commissioner argues a remand for further proceedings would constitute the appropriate remedy. (Doc. 14 at 7–18).

## DISCUSSION

Plaintiff argues the ALJ erred in three distinct ways. For the reasons set forth below, the Court agrees that the ALJ improperly discounted the findings, diagnoses, and objective results from treating physicians, improperly discounted Plaintiff's symptoms, failed to account for the frequency, duration, and disruption of treatment, and, accordingly, improperly denied Plaintiff's claim for disability benefits from October 10, 2017, through the date of the ALJ decision. The Court reverses the case for an award of benefits. It proves unnecessary to address Plaintiff's alternative arguments.

### I. Legal Standard

In assessing a disability claim, an ALJ may rely on the opinions of three types of physicians as follows: "(1) those who treat the claimant (treating physicians); (2)

those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should afford each physician's opinion a certain amount of deference based on that physician's classification. A treating physician's opinion deserves the greatest weight. *Id*. ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). An examining physician's opinion is entitled, in turn, to a greater weight than a non-examining physician's opinion. *Lester*, 81 F.3d at 830.

An ALJ should afford a treating physician's opinion deference because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). Despite this deference, a treating physician's opinion is not necessarily conclusive as to either the physical condition or the ultimate issue of disability. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

An ALJ should reject a treating physician's opinion only under certain circumstances. *Lester*, 81 F.3d at 830. An ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" when discounting a treating physician's uncontradicted opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotations omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may accomplish this task by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ must do more than simply offer conclusions. An ALJ must set forth interpretations and explain why those conclusions, rather than the doctor's, are correct. *Reddick*, 157 F.3d at 725. A non-examining physician's opinion cannot constitute, by itself, substantial evidence that justifies the rejection of a treating or examining physician's opinion. *Lester*, 81 F.3d at 831. A non-treating, non-examining physician's findings can amount to substantial evidence if other evidence in the record supports those findings. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

An ALJ may discredit a treating physician's opinions that are conclusory, brief, or unsupported by the record as a whole or objective medical findings. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2001). An ALJ can meet this

burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1980).

The uncontroverted opinions of the claimant's physicians on the ultimate issue of disability do not bind an ALJ, but an ALJ cannot reject those opinions without presenting clear and convincing reasons for doing so. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). A court can reject a treating physician's controverted opinion on disability only with specific and legitimate reasons supported by substantial evidence in the record. "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988) (internal citations omitted).

## II.   Application to Tyler's Claim

Plaintiff claims disability based on a compound set of ailments including emphysema with scarring from a history of tuberculosis, cervical degenerative disk disease, shoulder arthritis, osteoarthritis of the thumbs, carpal tunnel syndrome, gastrointestinal reflux disease, Barrett's esophagitis, a bleeding ulcer, and irritable bowel syndrome. (Doc. 11 at 19–20).

The ALJ found that Plaintiff's "medically determinable impairments significantly limit the ability to perform basic work activities." (Doc. 11 at 19). The

ALJ listed several impairments as "severe," including Plaintiff's cervical degenerative disc disease, left shoulder arthritis with tendinopathy, osteoarthritis of the thumbs, carpal tunnel syndrome, and emphysema with scarring from a history of tuberculosis. (Doc. 11 at 19). The ALJ also considered the effect of additional impairments, such as gastrointestinal reflux disease, Plaintiff's esophagitis, shingles, ulcer, irritable bowel syndrome, and mild obesity. (Doc. 11 at 20). Although the ALJ concluded that the record did show evidence of these conditions, the conditions did "not meet the definition of severe, because they caused only transient to mild symptoms and limitations, are well controlled with treatment, [and] have not met the 12-month-durational requirement." (Doc. 11 at 20). Therefore, the ALJ concluded that Plaintiff's residual functional capacity was not limited. (Doc. 11 at 20). In making this finding, the ALJ considered the opinions of treating physicians, State agency medical consultants, and testimonial evidence.

The ALJ erred by improperly discounting the objective medical findings of Plaintiff's treating physicians. The objective medical findings, when taken as a whole, establish a firm basis for Plaintiff's complaints of pain and physical limitations. The ALJ found that while "claimant has a history of cervical degenerative disc disease . . . records support the claimant's alleged neck impairment, but the balance of evidence suggests the claimant's condition is less serious than alleged." (Doc. 11 at 24). The ALJ failed to consider, however, the

entirety of the objective medical record. For example, the ALJ failed to consider the Plaintiff's most recent MRI results. (Doc. 11 at 609–10). That MRI indicated an articular partial thickness tear, chronic degeneration of glenoid cartilage, and tendinosis of the superior subscapularis. (Doc. 11 at 609–10). Such findings prove consistent with Plaintiff's claims of pain and physical limitation.

The ALJ described Plaintiff's history of treatment as "conservative" because the record did not include a history of corrective surgeries for specified impairments. (Doc. 14 at 7). The ALJ failed to note, however, that Plaintiff's physicians strongly recommended corrective surgery and only delayed these more invasive therapies based on health and economic considerations. For example, Plaintiff's treating physician recommended surgery at several points to address Plaintiff's cervical degenerative disk disease but delayed surgery because "smoking negatively affects the fusion rate" and the Plaintiff "would have to quit before surgery." (Doc. 13 at 14–16). Plaintiff's treating physician also considered radio frequency ablation treatment, but Plaintiff was forced to forgo that option for more frequent short-term solutions when insurance coverage proved an obstacle to access. (Doc. 11 at 567–74).

The ALJ compounded these errors by focusing on isolated actions and improvements to Plaintiff's condition as evidence that Plaintiff was not disabled. The ALJ focused, for example, on an isolated incident in which Plaintiff chopped

wood for her partner. (Doc. 11 at 24). Plaintiff's partner became ill, and Plaintiff had to help move her partner—who weighed around 300 pounds—and chop wood to heat their home. (Doc. 11 at 24). The ALJ concluded from that evidence that Plaintiff's testimony regarding her own condition was questionable and that her "condition is less limiting than alleged." (Doc. 11 at 24). The ALJ ignored evidence from Plaintiff's physician, Dr. Miller, who reported that Plaintiff's condition significantly worsened from the demands of caring for her partner. (Doc. 11 at 462). Dr. Miller's notes also clarify that these arduous tasks were not done regularly. (Doc. 11 at 462). Further, this episode resulted in Plaintiff's need for an expedited epidural treatment—a treatment that ultimately failed to provide necessary pain management. (Doc. 11 at 462). The ALJ failed to consider the negative treatment implications of those activities and instead used this isolated instance to discredit the Plaintiff and treating physician's assessments of her physical limitations. "It is an error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ concentrated on other isolated improvements to the Plaintiff's pain management and physical therapy before her period of disability began. For example, the ALJ quoted a May 2019 physicians note that described that Plaintiff "responded very well" to her injection treatment. (Doc. 11 at 24). In that same note,

however, the treating physician discussed the possible need for additional treatments if the neck symptoms related to facet syndrome continued. (Doc. 11 at 574). Throughout the record, additional evidence exists that the injection treatment wore off quickly with only "somewhat" favorable mitigation and on-going pain in her neck and back. (Doc. 11 at 567, 671, 582).

The ALJ further committed error by giving improper weight to the opinion of state medical experts to discount the objective findings of treating physicians. The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of an opinion of an examining physician. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). A non-treating, non-examining physician's findings can amount to substantial evidence if other evidence in the record supports those findings. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The ALJ accorded "great weight" to the opinions of Dr. William Fernandez M.D., and Dr. Jose Rabelo, M.D., the state agency medical consultants. (Doc. 11 at 26). These consultants assessed that Plaintiff was capable of a range of physical tasks including that Plaintiff could "occasionally climb ladders, ropes and scaffolds," "carry, push, or pull up to 20 pounds occasionally and 10 pounds frequently," and "frequently balance, stoop, kneel, crouch." (Doc. 11 at 26). The ALJ found the consultants' opinions "internally consistent and well supported by a reasonable

explanation and the available evidence." (Doc. 11 at 26). The supporting evidence provided by the ALJ included Plaintiff's "ability to care for her significant other, do laundry, care for her own hygiene, and chop wood." (Doc. 11 at 26). These observations of the ALJ cannot constitute substantial evidence that would overcome the testimony of treating physicians.

The ALJ is required to consider the "frequency of treatment, duration, [and] disruption to routine." Social Security Regulations, 96-8p. Here, the ALJ failed to consider adequately the ongoing disruptions to Plaintiff's life. Plaintiff's extensive ailments often required medical care three times a month. (Doc. 13 at 6–35). The ALJ failed to note, weigh, or otherwise consider the frequency of treatment entirely in their decision. This legal error only compounds the other errors identified above.

Put simply, the ALJ must provide a good reason for the weight that the ALJ affords the treating physicians' opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's justification for granting the consulting state physicians' opinions such great weight proves insufficient. As explained above, the ALJ failed to explain adequately why their interpretations, rather than the objective medical record, were correct. The ALJ accordingly erred by affording such little weight to the treating source's opinions, discounting Plaintiff's testimony, failing to consider Plaintiff's frequency of treatment, and according too much weight to state agency medical consultants. The ALJ committed legal error when failing to provide a good

reason for declining to afford sufficient deference to the treating physician's medical findings. See 20 CFR §§ 404.1527(c)(2), 416.927(c)(2).

## REMEDY

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). When the record is fully developed and further proceedings would serve no useful purpose, the Court may remand for an immediate award of benefits. Id. Remand for an award of benefits proves appropriate if there are no outstanding issues that must be resolves before a determination of disability can be made and if it is clear from the record that the ALJ would be required to find the claimant disabled if the ALJ properly had credited a treating or examining physician's opinion. *Id*. (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)).

Remand for an immediate award of benefits proves appropriate here. The record is fully developed, and further proceedings would serve no useful purpose. No outstanding issues exist that must be resolved before a determination of disability can be made. It is clear from the record that the ALJ would have been required to find Plaintiff disabled from October 10, 2017, if the ALJ had credited properly the opinions of treating physicians. *See Benecke*, 379 F.3d at 593. The Court will reverse the Commissioner's final decision denying the Plaintiff disability insurance benefits

and remand for an immediate award of benefits from October 10, 2017 through the date last insured.

## ORDER

Accordingly, **IT IS ORDERED** that:

1. Plaintiff's Motion (Doc.13) is **GRANTED**;

2. The Commissioner's final decision denying Plaintiff's claims for disability insurance benefits is reversed and remanded for an immediate award of benefits from October 10, 2017 through the date last insured; and

3. The Clerk of Court is directed to enter judgment accordingly.

Dated the 23rd day of June, 2021.

_____
Brian Morris, Chief District Judge
United States District Court